FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2012 JAN 25  PM 3: 43

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) INFORMATION |
| | ) |
| | ) |
| v. | ) CASE NO. 2:12CR24 |
| | ) Judge Graham |
| | ) Violation: |
| THE SCOTTS MIRACLE-GRO | ) 7 U.S.C. § 136j(a)(1)(A) |
| COMPANY | ) 7 U.S.C. § 136j(a)(1)(E) |
| | ) 7 U.S.C. § 136j(a)(2)(G) |
| | ) 7 U.S.C. § 136j(a)(2)(M) |

THE UNITED STATES ATTORNEY charges that at all times relevant to this

Information, in the Southern District of Ohio:

A. Defendant

1. THE SCOTTS MIRACLE-GRO COMPANY ("SCOTTS") was the world's largest

marketer of branded consumer lawn and garden products. It was located at 14111 Scottslawn

Road in Marysville, Ohio 43041 and was a corporation registered to do business in the State of

Ohio. SCOTTS manufactured and sold products including pesticides, herbicides, fertilizers, and

bird and animal foods under numerous brand names.

B. Pesticide Control Law

2. The manufacture, distribution, and use of pesticides is regulated by the Federal

Insecticide, Fungicide, and Rodenticide Act, as amended, Title 7 United States Code (U.S.C.),

Sections 136, *et seq.*, (FIFRA) and the regulations promulgated under its authority by the United

States Environmental Protection Agency (EPA).

3. The term "pesticide" is defined in Title 7 U.S.C. § 136(u) to include any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest. Under Title 7 U.S.C. § 136(t), a pest could include any insect, animal, plant, fungus, or micro-organism living outside of humans and animals.

4. Except as otherwise authorized by EPA, under Title 7 U.S.C. § 136a, no person may distribute or sell any pesticide in the United States without it first being registered with EPA. Before registering a pesticide, EPA requires that it be tested in order to determine its impact upon human health and the environment and in order to develop specific instructions and restrictions for its safe and effective use. As a condition of its registration of a pesticide, EPA requires these instructions, restrictions, and warnings regarding the products' safety and effective use be clearly stated on a pesticide's label which must be approved by EPA and affixed to every container of the pesticide that is distributed or sold. Pesticide producers are required to maintain certain records regarding EPA's registration of the products they manufacture or distribute. Title 7 U.S.C. § 136f.

5. Title 7 U.S.C. § 136v authorizes states to regulate pesticides sold or used within their borders and allows states to impose limitations on their use, additional to EPA's, so long as they are consistent with the terms of EPA's registration or are otherwise approved by EPA. Many states prohibit the distribution or use of any pesticide that is not registered with the state pesticide control agency. States issuing their own registrations require, as a condition of registration, that a pesticide first be registered by EPA under FIFRA. This is typically demonstrated by an applicant for state registration by submitting to the state a copy of EPA documents verifying federal registration of the pesticide product.

2

6. Title 7 U.S.C. § 136j(a)(1)(A) prohibits the knowing sale or distribution, by any person in any state, of any pesticide that is not registered by EPA under Title 7 U.S.C. § 136a or otherwise authorized by EPA.

7. Title 7 U.S.C. § 136j(a)(2)(G) prohibits the knowing use of any registered pesticide in a manner inconsistent with its labeling as prescribed under the terms of its registration.

8. If a pesticide contains any statement that is false or misleading, if it fails to contain specified directions for use, or if the label does not contain necessary warnings or other information material to EPA's registration of the pesticide, the product is considered, under Title 7 U.S.C. § 136(q), misbranded.

9. Title 7 U.S.C. § 136j(a)(1)(E) prohibits the knowing sale or distribution, by any person in any state, of any pesticide that is misbranded.

10. Under Title 7 U.S.C. § 136j(a)(2)(M) it is unlawful for any person knowingly to falsify, among other things, all or part of any application for pesticide registration, any information submitted to EPA pursuant to Title 7 U.S.C. § 136e (registration requirements for pesticide manufacturers), any records required to be maintained pursuant to FIFRA, or any report filed under the statute.

### C. Factual Allegations

### COUNT 1
(Pesticide Misuse)

11. Paragraphs 1 through 4 and paragraph 7 above are realleged and incorporated herein.

12. In November 2005, SCOTTS acquired a company that produced a line of wild bird food products that SCOTTS marketed under names including Morning Song, Country Pride, Scotts' Songbird Selections, and Scotts' Wild Bird Food (collectively, Morning Song). SCOTTS

3

produced the wild bird food as it had been manufactured by the previous manufacturer, by adding the insecticides Storcide ll and Actellic 5E to Morning Song in order to prevent insect infestation of the feed grains during storage.

13. Storcide II and Actellic 5E are pesticides registered by EPA. EPA has approved the use of Storcide II and Actellic 5E on stored food, feed, and oil grains, on stored seed, and on grain bins and warehouses for protection against insect infestation. The application of Storcide II and Actellic 5E to bird food is not a use authorized by EPA for either of these pesticides. The EPA-approved Storcide II label warns that "Storcide II is extremely toxic to fish and toxic to birds and other wildlife." "Exposed treated seeds are hazardous to birds and other wildlife."

14. During the summer and fall of 2007, a pesticide chemist and an ornithologist working for SCOTTS warned SCOTTS about the application of the pesticides Storcide II and Actellic 5E to SCOTTS' bird food products. The explicit use restrictions and dangers described on the label state, "Storcide II is extremely toxic to fish and toxic to birds and other wildlife" and "Exposed treated seeds are hazardous to birds and other wildlife." These employees warned SCOTTS about the potential threat to birds from using Storcide II in the bird food SCOTTS was selling nationwide. Notwithstanding these concerns, SCOTTS, for over two years after it acquired the Morning Song bird food line and for six months after the warnings raised by its employees, continued to use Storcide II on Morning Song wild bird food products, an application not authorized by EPA, as well another pesticide, Actellic 5E, which was also not authorized for use on bird food.

15. SCOTTS continued to sell its Storcide II-and-Actellic 5E-treated bird food until March 2008. At that time, SCOTTS made a voluntary disclosure to EPA and the United States Food and Drug Administration about its use of Storcide II and Actellic 5E and recalled its

4

remaining Morning Song bird foods from the market. Between its acquisition of Morning Song bird food products in November 2005, and their recall at the end of March 2008, SCOTTS distributed approximately 73,000,000 units of bird food treated with the pesticides Storcide II and Actellic 5E, applications not authorized by EPA. SCOTTS was able to secure and prevent from use only about 2,000,000 units.

16. Between November 2005 and March 2008, SCOTTS, a pesticide registrant and producer, improperly used the EPA-registered pesticides Storcide II and Actellic 5E to treat grains and marketed these grains as bird food. SCOTTS thereby knowingly used the registered pesticides Storcide II and Actellic 5E in a manner contrary to their labels,

In violation of Title 7 U.S.C. § 136j(a)(2)(G).

### COUNTS 2 - 6
(Falsification of Pesticide Registration Documents)

17. Paragraphs 1 through 5 and paragraph 10 above are realleged and incorporated herein.

Between and including 2004 and 2007, SCOTTS, by and through a manager in its Regulatory Affairs Department responsible for obtaining and maintaining federal registrations for the company's pesticide products (the "Federal Registrations Manager"), knowingly fabricated federal EPA registration certificates and other EPA documents for a number of SCOTTS pesticide products knowing that they were not registered with EPA under FIFRA. SCOTTS submitted these false documents as proof of federal registration to state regulatory agencies which, under the mistaken belief that they were valid, improperly issued state registrations for these products.

18. EPA received inquiries about two such pesticides, Scotts Garden Weed Preventer & Plant Food, EPA Reg. #62355-4, and Scotts Lawn Service Fertilizer with Halts, EPA Reg. #538-

5

304, causing EPA to check its files for each product. When it found that these pesticides were being marketed by SCOTTS without any apparent EPA registration, the agency contacted SCOTTS and inquired as to their regulatory status. The SCOTTS Federal Registrations Manager intentionally misled EPA by assuring EPA officials that the products were registered, suggesting that EPA had lost its files. In an effort to conceal the false registrations she had produced for these and other SCOTTS products and in an effort to deceive EPA into believing it had registered these products but lost its files, the SCOTTS Federal Registrations Manager fabricated correspondence and agency documents and sent them to EPA claiming them to be SCOTTS' copies of the official EPA files. She told EPA that these files proved that the products had been properly reviewed and registered by EPA when, in fact, they were not authentic EPA files and when, in fact, the products had not been approved and registered by EPA.

19. On or about the dates listed below, SCOTTS, by and through its Federal Registration Manager, knowingly fabricated federal registration and amendment documents to make it appear that the following SCOTTS pesticide products were registered with EPA when they were not. SCOTTS then submitted to state regulatory agencies these false documents as proof of federal registration in its application for state registrations thereby improperly obtaining state registrations for these products,

| Count 2 | August 2004 | Turf Builder with Fire Ant X, EPA Reg. #538-260 |
| Count 3 | May 2006 | Scotts Turf Builder Pre Post 2, EPA Reg. #538-299 |
| Count 4 | Spring 2006 | Scotts Garden Weed Preventer & Plant Food, EPA Reg. #62355-4 |
| Count 5 | Summer 2006 | Southern Max Fire Ant Killer (and Bonus S Max), EPA Reg. #538-301 |
| Count 6 | October 2007 | Scotts Lawn Service Fertilizer with Halts, EPA Reg. #538-304 |

In violation of Title 7 U.S.C. § 136j(a)(2)(M).

## COUNT 7
(Distribution of a Misbranded Pesticide)

20.  Paragraphs 1 through 4 and paragraphs 8 and 9 above are realleged and incorporated herein.

21.  Between and during the years 2005 and 2007, SCOTTS knowingly sold and distributed the pesticide Turf Builder with Fire Ant X, EPA Reg. #538-260 without the use directions required by EPA and bearing labels containing claims of efficacy and safety and identifying target pests that EPA had specifically rejected and forbidden SCOTTS from placing on its label,

In violation of Title 7 U.S.C. § 136j(a)(1)(E).

## COUNT 8
(Distribution of a Misbranded Pesticide)

22.  Paragraphs 1 through 4 and paragraphs 8 and 9 above are realleged and incorporated herein.

23.  Between and during the years 2006 and 2007, SCOTTS knowingly sold and distributed the pesticide Scotts Turf Builder Max Plus 2 Weed & Feed and Crabgrass Preventer, EPA Reg. #538-299 without the use directions required by EPA and bearing labels containing false and misleading claims not approved by EPA,

In violation of Title 7 U.S.C. § 136j(a)(1)(E).

## COUNTS 9 - 11
(Distribution of Unregistered Pesticides)

24.  Paragraphs 1 through 6 above are realleged and incorporated herein.

25.  On or about the dates listed below, SCOTTS knowingly sold and distributed the following pesticides that were not registered with the EPA,

| Count 9 | December 2006 | Scotts Garden Weed Preventer & Plant Food, EPA Reg. #62355-4 |
| Count 10 | January 2007 | Southern Max Fire Ant Killer (and Bonus S Max), EPA Reg. #538-301 |
| Count 11 | January 2008 | Scotts Lawn Service Fertilizer with Halts, EPA Reg. #538-304 |

In violation of Title 7 U.S.C. § 136j(a)(1)(A).

CARTER M. STEWART
United States Attorney

_____ Date:
GARY L. SPARTIS (0023428)
Columbus Branch Chief

J. MICHAEL MAROUS
Assistant United States Attorney

MICHAEL J. MCCLARY
Special Assistant United States Attorney
Criminal Enforcement Counsel
United States Environmental Protection Agency

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

_____ Date:
JEREMY F. KORZENIK
Senior Trial Attorney
Environmental Crimes Section

8